# ATTACHMENT H-2

**ATTACHMENT "H-2"**

**Defendants' Trial Brief on Specific Issues raised in the Pre-Trial Order**

At this time, Bard submits the following trial brief based on issues raised in the Pre-Trial Order.

**A. MDL No. 2641 and Law of the Case**

For the last five years, Bard's entire line of retrievable IVC filters has been the subject of a multidistrict litigation that was pending in the District of Arizona before the Honorable David G. Campbell, known as the *In Re: Bard IVC Filters Products Liability Litigation,* MDL 2641. MDL 2641 was "formed to centralize pretrial proceedings and complete all common fact and expert discovery concerning Bard IVC filters." *See* Doc. 74-1 ("Remand Order"). MDL 2641 was transferred to the District of Arizona in August 2015 when 22 cases had been filed. *Id*. Because the parties had partially conducted fact discovery before the MDL was created, this case was considered one of several "mature cases" then-pending in the MDL. *See id*. at 3-4.

Additional fact and expert discovery relevant to this case were then developed in the MDL where discovery was separated into phases. The parties completed the first phase of MDL discovery in early 2016. *See* Doc. 74-1 at 8. Thereafter, in August 2016, the parties stipulated that remand of the mature cases should await completion of expert discovery because such discovery may be relevant in trials of the mature

1

cases, and Judge Campbell agreed, "concluding that general expert disclosure and discovery, and any related *Daubert* motions, should be handled in this MDL." Doc. 74-1 at 5; *see also id*. at 3 ("[a]lthough the mature cases were more advanced than other cases in the MDL, the parties agreed that they should not be remanded immediately, but instead should remain part of the MDL as possible bellwether cases.").

The parties then completed the second phase of fact discovery in February 2017, "which included all common fact and expert issues in the MDL[.]" (Doc. 74-1 at 8.) CMO 8 governed expert disclosures and discovery. The parties designated general experts in all MDL cases and case-specific experts in individual bellwether cases. General expert discovery closed July 14, 2017. (Doc. 74-1 at 9.) At the time this case was remanded to this Court, "[a]ll common fact and expert discovery ha[d] been completed." *Id*. at 4.

The MDL also resolved many *Daubert* motions as well as summary judgment and *in limine* motions in the six bellwether cases, and the key legal and evidentiary rulings are summarized in Judge Campbell's Order and Suggestion of Remand. *See* 74-1 at 15-16 (*Daubert* Rulings); 17-23 (*Motion in limine* rulings); 24-25 (Deposition Designation Rulings). These rulings by Judge Campbell include the admissibility of FDA Evidence and the 510(k) clearance process; privilege and work-product rulings; *Daubert* rulings concerning many experts that Plaintiff

identify on her witness list; motions *in limine* that bear on generic issues applicable to this case; and deposition designations of various Bard corporate and expert witnesses.[1] In addition to the summaries provided by Judge Campbell, the CMOs, discovery orders, and other significant rulings from the MDL are listed in Exhibit 1 to the Remand Order. *See* 74-1 at 29-34.

It is Bard's position that the "Key Legal and Evidentiary Rulings" that Judge Campbell details beginning on page 12 of the Order and Suggestion of Remand [Doc. 74-1] should be the law of the case in this action.[2] *See id.* at 12-25 ("The Court has

---

[1] Bard believes that the majority of the deposition designations are generic in nature, and thus subject to Judge Campbell's rulings in the MDL. Because Plaintiff's case involves the Recovery® filter, however, Bard reserves the right to request that the Court re-evaluate certain of the deposition designation rulings given this fact.

[2] *See Shute v. Carnival Cruise Lines, Inc.,* 804 F. Supp. 1525, 1527 (S.D. Fla. 1992) ("Traditional principles of law of the case counsel against the transferee court reevaluating the rulings of the transferor court[.]") (internal quotation omitted); *In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig.*, No. 4:08-MD-2004 (CDL), 2017 WL 987457, at *2 (M.D. Ga. Mar. 14, 2017) (citing *In re Ford Motor Co.,* 591 F.3d 406, 411 (5th Cir. 2009) (noting that the law of the case doctrine, with some exceptions, applies to transferor courts in MDL proceedings));.*Hill v. Ford Motor Co.*, 975 F. Supp. 2d 1351, 1357 (N.D. Ga. 2013) ("The Fifth Circuit, among other courts, has held that when a ruling by an MDL transferee judge is challenged after remand in the transferor district in which the case was filed, that ruling constitutes the law of the case that should be followed, absent the existence of an exception to application of the law of the case doctrine"); *Murray v. Sevier,* 993 F. Supp. 1394, 1400 (M.D. Ala. 1997) ("For this court to reexamine the [transferor] court's prior decisions would likely amount to little more than a second-guessing of the [transferor] court's well-reasoned decisions. This viewpoint is largely adopted by transferee courts which have been faced with similar requests to overturn a transferor court's decision."); *see also In re Welding Fume Prod. Liab. Litig.,* No. 1:03-CV-17000, 2010 WL 7699456, at *2 (N.D. Ohio June 4, 2010) ("[T]he law of the case doctrine, in this context, ensures that the transferor judge is not asked to re-plow ground already prepared by the MDL court for the efficient harvest of a verdict at trial."); *In re Zyprexa Prod. Liab. Litig.,* 467 F. Supp. 2d 256, 273 (E.D.N.Y. 2006) (under the law of the case doctrine, pre-remand orders of the transferee court "remain binding if the case is sent back to the transferor court."); *see also Multi District Litigation Act,* 28 U.S.C. § 1407 (intended to "promote the just and efficient conduct of [] actions" through "coordinated or consolidated pretrial proceedings").

made many significant rulings in this MDL, some of which affect the mature cases."). Indeed, the parties attached as an exhibit and referenced Judge Campbell's order at length in their Joint Submission to this Court after remand. *See* Joint Submission Regarding Issues Remaining to Be Resolved and Proposed Scheduling Order [Doc. 74]. In addition, two of the MDL bellwether trials, *Booker* (No. CV-16-00474) and *Jones* (No. CV-16-00782), were decided under Georgia law. *See* Doc. 74-1 at 11-12 (summarizing bellwether trials). Reconsideration of issues that were already decided in the MDL would run contrary to the MDL Court's direction and would undermine the very purpose of the MDL process.

For all these reasons, Bard believes that the "Key Legal and Evidentiary Rulings" detailed in the Order and Suggestion of Remand constitutes the law of the case that should be followed.

## B. Failure to Recall Claim

Plaintiff contends that an issue to be decided by the jury is whether Bard was negligent in failing to initiate a recall of the filter at issue. But, Georgia does not recognize a civil cause of action for a failure to recall, and Plaintiff should be prohibited from arguing at trial that Bard failed to recall the Recovery® Filter.

Under Georgia law, products liability lawsuits may proceed on theories of strict liability, negligence, or breach of warranty. The relevant statues governing product liability actions are the statute of limitations, O.C.G.A. § 9-3-30, *et. seq.*, the

sections of the commercial code for breach of warranty claims, O.C.G.A. § 11-2-312, *et seq*., and the statutes governing products liability actions, O.C.G.A. § 51-1-11, 51-11-7, 51-12-1, *et seq*. None of these statutes recognize a civil cause of action for failure to recall. *See id*.

With respect to a negligence theory of liability, "absent special circumstances," no common law duty exists under Georgia law requiring a manufacturer to recall a product after the product has left the control of the manufacturer. *Ford Motor Co. v. Reese*, 300 Ga.App. 82, 85, 684 S.E.2d 279, 283–84 (2009) (holding that the trial court committed reversible error by instructing the jury on a duty to recall when Georgia law does not impose such a general duty upon manufacturers).[3] Special circumstances exist "if a manufacturer chooses to recall a product voluntarily" or if a "statute or governmental agency requires the manufacturer to recall the product." *Id*. at 85 n. 2, 684 S.E.2d at 284 n. 2.

Here, Plaintiff has no evidence that Bard voluntarily instituted a recall of the Recovery® Filter, that any statute or administrative regulation required a recall, or

---

[3] As a matter of public policy, Georgia law does not impose a continuing duty to recall upon manufacturers "[b]ecause the cost of locating, recalling, and replacing mass-marketed products can be enormous and will likely be passed on to consumers in the form of higher prices, the recall power should not be exercised without extensive consideration of its economic impact. Courts, however, are constituted to define individual cases, and their inquiries are confined to the particular facts and arguments in the cases before them. Decisions to expand a manufacturer's post-sale duty beyond making reasonable efforts to warn product users about newly discovered dangers should be left to administrative agencies, which are better able to weigh the costs and benefits of such action." *Ford Motor Co. v. Reese*, 300 Ga. App. 82, 86–87, 684 S.E.2d 279, 285 (2009).

that any other special circumstances existed that warranted the imposition of a duty to recall. *See id.* at 85 n. 2, 684 S.E.2d at 284 n. 2. *See also, e.g.*, *Clayton v. All. Outdoor Grp. Inc.*, No. 3:20-CV-117 (CDL), 2021 WL 1947886, at *2 (M.D. Ga. Mar. 30, 2021) (holding that plaintiff's failure to recall claim failed as a matter of law because defendant's alleged failure to promptly report a product defect to the United States Consumer Product Safety Commission did "not amount to the special circumstances contemplated by this exception to the no recall cause of action principle" ).

Plaintiff's reliance on *Mack Trucks, Inc. v. Conkle*, 263 Ga. 539, 436 S.E.2d 635 (1993) to support her failure to recall claim is misplaced. *Mack Trucks* predates *Ford Motor Co. v. Reese*, and the *Reese* court specifically "reject[ed] the plaintiffs' contention that the question of whether a manufacturer has a duty to recall a product was resolved by *Mack Trucks* and *Smith v. Ontario Sewing Machine Co.,* 249 Ga.App. 364, 368(b), 548 S.E.2d 89 (2001)." 300 Ga. App. 82, 84, 684 S.E.2d 279, 283 (2009). The *Reese* court determined that

> [a]lthough the plaintiffs in *Mack Trucks, Inc.* had brought a claim "for negligent failure to recall or warn," 263 Ga. at 539, 436 S.E.2d 635, there was no challenge or ruling on appeal as to the validity of that claim. . . . Rather, the issue on appeal was whether a negligence claim for a defective product was a "product liability" cause of action under the punitive damages statute. *Id*. Likewise, while this Court in *Smith* purported to recognize a duty to recall, 249 Ga.App. at 368(b), 548 S.E.2d 89, the Supreme Court of Georgia granted a writ of certiorari, expressly disapproved of this Court's resolution of that issue, and held that it was unnecessary for

6

>the Supreme Court to resolve the issue given the posture of the case, thereby acknowledging that the question of whether such a duty existed had not yet been decided by that Court.

*Id*.

Furthermore, earlier this year, the Middle District of Georgia cited *Ford v. Reese* in support of the proposition that "Georgia law generally does not recognize a cause of action based upon a manufacturer's failure to recall a product," and held that the plaintiff's claim that the defendants had a duty to recall the product failed as a matter of law. *Clayton v. All. Outdoor Grp. Inc.*, No. 3:20-CV-117 (CDL), 2021 WL 1947886, at *2 (M.D. Ga. Mar. 30, 2021) (citing *Ford Motor Co. v. Reese*, 684 S.E.2d 279, 283-84 (Ga. Ct. App. 2009)).

The other case the Plaintiff cites in the Pre-Trial Order, *In re Stand 'n Seal, Prod. Liab. Litig.*, No. 1:07MD1804-TWT, 2009 WL 3150417, at *4 (N.D. Ga. Sept. 28, 2009), is inapposite because the defendant in that case <u>voluntarily undertook a recall</u> of the product at issue, and the plaintiff claimed that the defendant was "liable for negligence in the execution of a recall." 2009 WL 3150417, at *4 (concluding that the defendant was entitled to summary judgment on plaintiff's negligent failure to recall claim).

Unlike the *Stand 'n Seal* case, in this case, Bard did not recall the Recovery® Filter and therefore cannot be liable for negligently executing a recall. *See* Compl. 27 ("Defendants failed to voluntarily recall the Bard Recovery filter . . . or otherwise remove the device from the market."). *Cf. Blossman Gas Co. v. Williams*, 375 S.E.2d

7

117, 120 (Ga. Ct. App. 1988) ("Although the dealer is not obligated to conduct the recall program, once it undertakes to do so a duty devolves upon the dealer to exercise ordinary care, and whether it did so under the circumstances is a question for the jury.").

Because this case does not involve any special circumstances contemplated by the exception to the no recall cause of action principle, Plaintiff's failure to recall claim fails and she should not be permitted to argue to the jury that Bard failed to recall the Recovery® filter.